**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 10-cv-03006-REB-BNB

NANCY E. SUNDQUIST,

    Plaintiff,

vs.

D.R. HORTON, INC., a Delaware Corporation,

    Defendant.

**ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS**

**Blackburn, J.**

This matter is before me on the **Defendant's Motion To Dismiss or, in the Alternative, Motion for Summary Judgment** [#5][1] filed February 2, 2011. The plaintiffs filed a response [#6], and the defendants filed a reply [#15]. I deny the motion in part and grant the motion in part.

### I.  JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question).

### II.  STANDARD OF REVIEW

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must determine whether the allegations in the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a). I must accept all well-pleaded allegations of the complaint as true.  ***McDonald v. Kinder-Morgan, Inc.***, 287 F.3d 992, 997 (10th Cir.

---

[1] "[#5]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

2002). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." ***Fernandez-Montes v. Allied Pilots Association***, 987 F.2d 278, 284 (5th Cir. 1993); ***see also Ruiz v. McDonnell***, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."), ***cert. denied***, 123 S.Ct. 1908 (2003). I review the challenged portion of a complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'" ***Ridge at Red Hawk, L.L.C. v. Schneider***, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)); ***see also Ashcroft v. Iqbal***, ___ U.S. ___, 129 S.Ct. 1937 (2009). "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Id.* (emphases in original).[2] Nevertheless, the standard remains a liberal

---

[2] ***Twombly*** rejected and supplanted the "no set of facts" language of ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Tenth Circuit clarified the meaning of the "plausibility" standard:

> "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.
>
> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."

***Robbins v. Oklahoma***, 519 F.3d 1242, 1247-48 (10th Cir. 2008) (quoting ***Twombly***, 127 S.Ct. at 1974; internal citations and footnote omitted).

one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 127 S.Ct. at 1965) (internal quotation marks omitted).

### III. FACTUAL ALLEGATIONS

The plaintiff, Nancy Sundquist, asserts claims of age discrimination and retaliation claim under the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. §§ 621 - 634. The defendant, D.R. Horton, Inc., is Sundquist's quondam employer. In Sundquist's complaint, she asserts that Horton terminated her employment as part of a reduction in force ("RIF") on the same day that she returned to Denver after meeting with Horton's human resources personnel in Fort Worth, Texas. Sundquist alleges that she traveled to Fort Worth to complain about alleged discriminatory working conditions based on her age. *Complaint* [#1], filed December 13, 2010, ¶ ¶ 25-37.

Specifically, Sundquist alleges that she is a 43 year old woman who began working for Horton in 2006. *Compl.* at ¶ 7. She alleges that her performance reviews were above normal and that her sales exceeded expectations. Sundquist alleges that she received one negative review in November of 2008, although she was not aware of that review until after her termination. *Id.* at ¶ ¶ 9-12.

Around April 6, 2009, Sundquist flew to the corporate headquarters of D.R. Horton in Fort Worth, Texas, to meet with human resources professionals. *Id.* at ¶ 16. There, she complained about being "treated less favorably than her younger co-workers" as well as "*express[ing] her desire to resign* during th[e] meeting due to the differing treatment." *Id. (*emphasis added*).* "Instead of accepting Ms. Sundquist's resignation," Sundquist alleges, "the Human Resource professionals instructed Ms.

Sundquist to return to Denver and act as though everything was normal so that they would have the opportunity to investigate Ms. Sundquist's complaints." *Id.*

Shortly after she returned to Denver, Sundquist received a call from Scott Davis, D.R. Horton's President of the Denver Division. Davis told Sundquist that he was laying her off as part of a Reduction In Force. *Id.* at ¶ 17. Sundquist alleges that after termination Horton replaced her with Tetrina Kloss, who Sundquist believes to be under the age of forty. *Id.* at ¶ 19. Additionally, Sundquist alleges that "younger, less experienced and underperforming employees" were not laid off as part of the RIF, and therefore, D.R. Horton favored the younger employees. *Id.* at ¶ 21.

Sundquist's claim of retaliation stems from her allegations that Horton terminated her "within hours of making complaints to Corporate Headquarters' Human Resources Professionals" as well as allegations that Horton failed to recall Sundquist to work after Horton told her that she was indeed "re-hirable" because her layoff was part of a RIF. *Id.* at ¶ ¶ 22-23. Specifically, Sundquist alleges that Horton began to hire new employees and that Horton has not contacted her to return to work, despite her asking if she was re-hirable. *Id.* at ¶ 23.

### IV. ANALYSIS

The defendant advances two principal arguments in support of its motion to dismiss: (1) that the plaintiff fails to allege a plausible age discrimination claim; and (2) that the plaintiff fails to allege a plausible retaliation claim. Applying the applicable standards of review, I disagree with the first contention. I agree in part and disagree in part with the second contention.

#### A. Conversion To Motion for Summary Judgment

Under FED. R. CIV. P. 12(d), a motion to dismiss under FED. R. CIV. P. 12(b)(6)

must be converted to a motion for summary judgment if matters outside of the pleadings are presented in support of the motion to dismiss.  Horton includes with its motion to dismiss a copy of a letter of resignation tendered by Sundquist to Horton during Sundquist's trip to Fort Worth.  *Motion to dismiss* [#5], Exhibit A.  Horton argues that Exhibit A does not trigger a conversion to a motion for summary judgment under Rule 12(d).  As Horton notes, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Motion to dismiss* [#5], p. 3 (quoting **GFF Corp. V. Associated Wholesale Grocers**, 130 F.3d 1381, 1384 (10th Cir.1997); **see also Alvarado v. KOB-TV, L.L.C.**, 493 F.3d 1210, 1215-16 (10th Cir. 2007).

The letter of resignation is central to Sundquist's claim, and she implicitly references the letter in her complaint when she alleges that  "Instead of accepting Ms. Sundquist's resignation, the Human Resource professionals instructed Ms. Sundquist to return to Denver and act as though everything was normal so that they would have the opportunity to investigate Ms. Sundquist's complaints." *Complaint* [#1], ¶ 16.  Under these circumstances, Exhibit A properly may be considered in support of Horton's motion to dismiss, and conversion to a motion for summary judgment under Rule 12(d) is not required.

### B. Claim One: Age Discrimination in Violation of the ADEA

To establish a *prima facie* case of discriminatory discharge under the ADEA, "a claimant affected by a RIF must prove: (1) that she is within the protected age group; (2) that she was doing satisfactory work; (3) that she was discharged despite the adequacy of her work; and (4) that there is some evidence the employer intended to discriminate

against her in reaching its RIF decision." **Beaird v. Seagate Tech.,** 145 F.3d 1159, 1165 (10th Cir. 1998).  Horton argues that Sundquist fails to allege a plausible age discrimination claim because she fails to allege that Horton discharged her.  Sundquist alleges in her complaint that while she expressed her desire to resign during a meeting with the human resources professionals, the resignation never became effective because the professionals told her to return to Denver and act as though everything was normal while they looked into her discrimination complaint.

Horton cites **Britton v. Trinidad***,* 687 P. 2d 523, 525 (Colo. App. 1984) and **Brammer-Hoelter v. Twin Peaks Charter Academy***,* 492 F.3d 1192, 1211 (10th Cir. 2007) to support its contention that the plaintiff effectively resigned before Scott Davis called to let her know that he was laying her off.  I find Sundquist's situation to be distinguishable from the employees both of these cases.

In **Britton***,* a police captain submitted a letter of resignation to the Chief of Police to be effective immediately, shortly after the District Attorney informed the captain of potential criminal charges to be brought against the captain.  Days later, the captain sent a letter to the city's manager requesting rescission of his resignation.  The manager responded that he already had accepted the resignation, and he refused to rescind it.  *Id.* at 524-525.  The Colorado Court of Appeals held in **Britton** that the resignation was not submitted under duress, was effective when tendered, and could not be withdrawn after its effective date.  *Id.* at 525.  In **Brammer**, the plaintiffs sent a letter of resignation on March 1 and a letter of rescission on March 5.  The following day, the board of education of the employer school responded by sending a letter to the plaintiffs confirming the board's acceptance of their resignations.  *Id.* at 1199-1200.  The **Brammer** court held that, as a matter of contract law, the resignations were effective

when tendered.  *Id*. at 1210 - 1211.

Contrastingly, Sundquist alleges in her complaint that she "expressed her desire to resign during th[e] meeting", and that "[i]nstead of accepting Ms. Sundquist's resignation, the Human Resources professionals instructed Ms. Sundquist to return to Denver and act as though everything was normal so that they would have the opportunity to investigate Ms. Sundquist's complaints." *Compl.* at ¶ 16.  Sundquist's factual allegations, if true, present a plausible contention that, after her discussion with Horton's human resources officials in Fort Worth, Sundquist did not intend to resign, that with Horton's encouragement Sundquist effectively withdrew her resignation letter, and that Horton never accepted her resignation.  Sundquist's allegations are distinguishable from the facts in **Britton** and **Brammer**.  In both **Britton** and **Brammer** there was no dispute that the plaintiffs intended to resign at the time that they submitted their letters of resignation.  It was not until days later that the **Britton** and **Brammer** plaintiffs sought to rescind their resignations after those resignations had been acepted their respective employers.  In contrast, and assuming Sundquist's factual allegations to be true, it is plausible that Sundquist revoked or rescinded her initial intendtion to resign after discussing her situation with Horton officials and then heeding their advice.

Therefore, I find that the allegations in the plaintiff's complaint are sufficient to state a plausible claim for age discrimination under the ADEA.

### C.  Claim  two:  Retaliation Under the ADEA

In Sundquist's second claim for relief, she asserts two sub-claims for retaliation. Sundquist first claims that Horton retaliated against her by terminating her employment the same day that she complained to Horton's human resources department about "younger employees receiving more favorable treatment" *Compl.* at ¶ 35.  The plaintiff

further alleges that "Ms. Sundquist has been retaliated against as well when D.R. Horton has [sic] not recalled her from the RIF in favor of hiring younger individuals." *Id.* at ¶ 36. In response to these claims, Horton argues that it did not retaliate against Sundquist because she voluntarily resigned her employment before her termination. If Sudquist resigned, Horton argues, she did not suffer a materially adverse employment action. *Motion to dismiss*, p. 8. The defendant argues also that the failure to hire retaliation claim lacks merit because the plaintiff never actually applied for a job after she left the defendant's employment. *Id. at* pp. 8-9.

In this context, to establish a *prima facie* case of retaliation, a plaintiff must demonstrate "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." **Argo v. Blue Cross & Blue Shield of Kan., Inc.**, 452 F.3d 1193, 1202 (10th Cir. 2006). Horton argues that Sundquist fails to allege facts sufficient to state a claim for retaliation. Horton argues (1) that Sundquist has not alleged that she was subject to an adverse employment action when her employment was terminated, because Sundquist had already resigned; and (2) that she fails to allege that she ever applied for a job with Horton after she was laid off. *Motion to Dismiss* [#5], filed February 2, 2011, pp. 8-9. If Sundquist did not apply for a job with Horton, Horton argues, Horton could not impose an adverse action by not hiring Sundquist.

1. First Retaliation Claim: Termination in Retaliation for Complaining

In **Argo**, the Tenth Circuit held that a plaintiff "easily satisfies the requirements of a *prima facie* case of retaliation" when an employer fires that plaintiff twenty-four days after he filed an internal grievance complaint. **Argo**, 452 F.3d at 1202. The plaintiff in

8

*Argo* alleged sexual harassment by his female supervisor, which led him to complain internally within the organization. *Id.* The Tenth Circuit held that this grievance "certainly qualifies as protected opposition to discrimination under Title VII." *Id.* Twenty-four days after making the complaint, the defendant fired the plaintiff. The Tenth Circuit held that the action "obviously qualifies as materially adverse." *Id.* (internal quotation marks omitted).  The Tenth Circuit then decided that the "close temporal proximity" between the making of the complaint and the termination of the plaintiff, a period of twenty-four days, provided a sufficient basis to support the inference that a causal connection existed between the complaint and the termination. *Id.*

In essence, Horton argues that it could not have imposed any adverse action on Sundquist because Sundquist resigned her employment before her employment was terminated.  Tautologically, if Sundquist's employment was not terminated, then Horton could not impose any adverse employment action.  As discussed in Section IV.B., above, I conclude that Sundquist adequately has alleged facts to support her contention that her resignation never became effective.  Further, she alleges that her employment was terminated shortly – almost immediately – after she complained to Horton's human resources department about age discrimination.  Termination, by definition, is a materially adverse employment action.  Sundquist's alleged termination on the same day she complained of discrimination easily supports an inference of causal connection and retaliatory motive.

Therefore, I find that the allegations in the plaintiff's complaint are sufficient to state a plausible claim for retaliation, in violation of the ADEA, based on her alleged termination shortly after she complained of age discrimination.

2. Second Retaliation Claim: Failure to Rehire

9

The second aspect of Sundquist's retaliation claim involves the plaintiff's claim that the defendant failed to re-hire her when it began to hire employees after the RIF. Horton requests that this court dismiss this claim on the grounds that the plaintiff never applied for any position after her employment ended in April of 2009.   Specifically, Sundquist alleges that she "asked if she was re-hirable" when her employment was terminated, and was told that she was re-hirable.. *Compl.* at ¶ 23.  Sundquist alleges that the defendant retaliated against her by failing to "recall[ ] her from the RIF in favor of hiring younger individuals."  *Compl.* at ¶ 36.  Having reviewed Sundquist's allegations concerning Horton's failure to rehire, I conclude that Sundquist has failed to allege a plausible retaliation claim based on Horton's failure to re-hire her.

As detailed above, a plaintiff asserting a retaliation claim must allege and prove that the defendant employer took some kind of materially adverse action against the plaintiff employee.  ***Argo***, 452 F.3d at 1202. Sundquist alleges that Horton's failure to rehire her was a materially adverse action.  In a discriminatory failure to hire case, a plaintiff must establish that: (1) she belongs to a protected class, (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) despite being qualified, the plaintiff was rejected; and (4) after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications.  ***Garrison v. Gambro, Inc.***, 428 F.3d 933, 937 (10th Cir. 2005).  A plaintiff need not formally apply for a job, but the law requires either that the employer be on "specific notice" that the plaintiff seeks employment, or, in the case of informal hiring procedures, that the plaintiff be part of the group of people who "might be reasonably interested" in the particular job.  ***Whalen v. Unit Rig, Inc.***, 974 F.2d 1248, 1251 (10 th Cir. 1992), ***cert. denied***, 507 U.S. 973, 113 S.Ct. 1417, 122 L. Ed. 2d 787

(1993). An employer is on "specific notice" that an employee or applicant wants a certain job when the employee or applicant "clearly and repeatedly [makes] his interest in a job" known to a hiring official. **Grant v. Behtlehem Steel Corp.**, 635 F.3d 1007, 1017 (2nd Cir. 1980).

I conclude that the requirement that the employer be on "specific notice" that the plaintiff seeks reemployment, or, in the case of informal hiring procedures, that the plaintiff be part of the group of people who "might be reasonably interested" in the particular job, is applicable also to a claim that en employer failed to hire in retaliation for an employee's opposition to discrimination. Assuming the allegations in the plaintiff's complaint to be true, Sundquist never applied for a position with Horton after her initial employment ended in April of 2009. None of Sundquist's allegations indicates that Horton was on specific notice that Sundquist sought a position with Horton after her initial employment ended in April of 2009. Sundquist does not allege that Horton utilized informal hiring procedures and that she was part of the group of people who "might be reasonably interested" in the particular job. **Whalen v. Unit Rig, Inc.**, 974 F.2d 1248, 1251 (10 th Cir. 1992), **cert. denied**, 507 U.S. 973, 113 S.Ct. 1417, 122 L. Ed. 2d 787 (1993). Given these allegations, I conclude that Sundquist's complaint does not contain factual allegations sufficient to state a plausible retaliation claim based on Horton's alleged failure to re-hire Sundquist after Sundquist's initial employment ended in April of 2009.

## V. CONCLUSION & ORDER

Applying the standards of FED. R. CIV. P. 12(b)(6), I conclude that the allegations in the plaintiffs' complaint are sufficient to state a claim of age discrimination under the ADEA and a claim of retaliation in violation of the ADEA to the extent that the plaintiff

alleges that she was terminated for complaining about alleged age discrimination.  On the other hand, I conclude that the plaintiff's allegations are not sufficient to state a claim of retaliation based on Horton's failure to re-hire the plaintiff after her initial employment ended in April of 2009.

**THEREFORE, IT IS ORDERED** as follows:

1.   That the **Defendants' Motion To Dismiss or, in the Alternative, Motion for Summary Judgment** [#5] filed February 2, 2011, is **DENIED** as to the plaintiff's claim of age discrimination under the ADEA;

2.  That the **Defendants' Motion To Dismiss or, in the Alternative, Motion for Summary Judgment** [#5] filed February 2, 2011, is **DENIED** as to the plaintiff's retaliation claim based on her alleged termination in April of 2009; and

3.  That the **Defendants' Motion To Dismiss or, in the Alternative, Motion for Summary Judgment** [#5] filed February 2, 2011, is **GRANTED** as to the plaintiff's retaliation claim based on the defendant's failure to re-hire the plaintiff after April of 2009.

Dated July 28, 2011, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge